FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2006 MAR 17  AM 9: 54

CLERK _L. Lavictoire_
SO. DIST. OF GA.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

GREGORY LEE MURPHY, )
)
            Petitioner, )      CIVIL ACTION NO.: CV205-076
)
            v. )
)
UNITED STATES OF AMERICA, )      (Case No.:  CR204-21)
)
            Respondent. )

### MAGISTRATE JUDGE'S REPORT and RECOMMENDATION

      Petitioner Gregory Lee Murphy ("Murphy"), an inmate currently incarcerated at the Federal Prison Camp in Jesup, Georgia, filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255.  Respondent filed a Response.  The undersigned conducted two evidentiary hearings on this matter, and the parties filed post-hearing pleadings.  For the reasons which follow, Murphy's Motion should be **DENIED**.

### STATEMENT OF THE CASE

      Murphy pleaded guilty to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), on August 12, 2004.  On October 27, 2004, the Honorable Anthony A. Alaimo sentenced Murphy to 92 months' imprisonment and three years' supervised release and imposed a $100 special assessment.  Murphy did not file a direct appeal.

      In the instant motion, Murphy asserts that his court-appointed attorney, Holle Weiss-Friedman ("Weiss-Friedman"), rendered ineffective assistance of counsel because she

AO 72A
(Rev. 8/82)

failed to advise the Court of a conflict of interest which existed between her and Murphy and because she failed to file an appeal on his behalf after being instructed to do so. Murphy also asserts that his sentence was imposed in violation of his Sixth Amendment rights.  Murphy further asserts that the trial court lacked jurisdiction over him because the indictment was not returned in open court, as required by FED. R. CRIM. P. 6(f).  (Doc. No. 1, pp. 5-6.)  Murphy, through counsel, contends that Weiss-Friedman made no attempt to investigate the allegations contained in the indictment or to determine whether there were factual or procedural defenses to the charged crime which could have been asserted. Murphy alleges that Weiss-Friedman did not file timely written objections to the Pre-Sentence Investigation Report ("PSI"), nor did she file an appeal to challenge the imposed enhancements to his sentence and the Court's refusal to permit a decrease in his offense level based on acceptance of responsibility.  (Doc. No. 27, pp. 2-4.)

## DISCUSSION AND CITATION TO AUTHORITY

**I.      Murphy's Ineffective Assistance Claims Are Without Merit.**

Although § 2255 does not specifically include a statutorily mandated exhaustion of remedies requirement before a writ of habeas corpus petition can be brought, federal courts have created an exhaustion requirement.  See Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300, 129 L. Ed.2d 277 (1994). A section 2255 petition cannot be a substitute for a direct appeal; therefore, a petitioner is procedurally defaulted from seeking habeas relief on claims that he could have raised on direct appeal.  Id.  If a petitioner has not raised an available issue on direct appeal, he has waived his right to appeal.  This procedural default can be overcome by showing "'cause'" for the waiver of a direct appeal

2

and "'actual prejudice resulting from the alleged . . . violation.'" Id. (quoting Wainwright v. Sykes, 433 U.S. 72, 84, 97 S. Ct. 2497, 2505, 53 L. Ed.2d 594(1977)). "Constitutionally ineffective assistance of counsel can constitute cause" to overcome a procedural default. Holladay v. Haley, 209 F.3d 1243, 1254 (11th Cir. 2000). However, such a claim must have merit. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

A claim that a defendant did not receive effective assistance of counsel involves the right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063, 80 L. Ed.2d 674 (1984). The "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Id. at 686, 104 S. Ct. at 2064. To be successful on an ineffective assistance of counsel claim, the defendant must satisfy a two-part test: (1) his counsel's performance was deficient, falling "below an objective standard of reasonableness"; and (2) the deficient performance prejudiced his defense so badly that there is a reasonable probability that it impacted the result. Id. at 687-88, 104 S. Ct. at 2064; Quince v. Crosby, 360 F.3d 1259, 1265 (11th Cir. 2004). When reviewing the level of performance provided by counsel, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.

This two-pronged test set forth by Strickland applies in situations where a defendant seeks to attack his guilty plea based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S. Ct. 366, 369-70, 88 L. Ed.2d 203 (1985). To satisfy the Strickland test, a petitioner must show that, but for any alleged errors made by his counsel,

3

there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. Hill, 474 U.S. at 58-59, 106 S. Ct. at 369-70. The Strickland test also is applicable to counsel's assistance during sentencing. Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001).

### A.   Conflict of Interest Claim.

Murphy asserts that Weiss-Friedman failed to advise the Court of a conflict which existed between them which rendered her representation of him meaningless.  Murphy alleges that the conflict arose because he believed Weiss-Friedman was "not doing enough" to defend him based on the charge for which he was under indictment.  (Aff., ¶ 12.)  Murphy also alleges that, had Weiss-Friedman not labored under this conflict of interest, she would have argued to the Court that his sentence should not exceed 30-37 months.

A petitioner must show "specific instances in the record that demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Caderno v. United States, 256 F.3d 1213, 1218 (11th Cir. 2001) (internal citation omitted).  "A speculative or hypothetical conflict . . . does not violate the Constitution; the [petitioner] must demonstrate that his lawyer actively represented conflicting interests." Id. at 1213.

Murphy has failed to present the Court with any evidence that Weiss-Friedman labored under a conflict of interest during the time of her representation.  In addition, Murphy fails to establish that, if an actual conflict existed, said conflict affected Weiss-Friedman's representation.  This assertion is without merit.

4

### B.    The Indictment and Defenses Thereto.

Murphy avers that Weiss-Friedman was ineffective by failing to investigate the allegations contained in the indictment and by failing to determine whether there were factual or procedural defenses to the charge which could have been asserted. Specifically, Murphy contends that Weiss-Friedman failed to question whether the police officers' stop of him was reasonable under the circumstances, if their search of Murphy was based on probable cause, whether the firearm found as a result of the search was subject to suppression, or if Murphy was sober at the time of his arrest. (Doc. No. 27, p. 2.)

The Government contends that Murphy's allegations are bare assertions without factual support, and thus, are insufficient to entitle him to his requested relief. Nonetheless, the Government asserts that the officers involved in Murphy's arrest had reasonable suspicion to stop him because they were informed of a fight involving a weapon, saw a man walking away from the area of the fight who refused to stop after being directed to and kept reaching for his waistband, and officers saw the outline of a handgun in Murphy's pants. (Doc. No. 28, p. 6.) The Government also asserts that the resulting search was proper to protect the safety of themselves and others. Accordingly, the Government alleges, Murphy cannot demonstrate deficient performance or prejudice due to Weiss-Friedman failing to file a motion to suppress.

During the first portion of the evidentiary hearing before the undersigned, Weiss-Friedman testified that she and Murphy met on three occasions before they determined that he would plead guilty to being a convicted felon in possession of a firearm. (Doc. No. 25, pp. 26-27.) Weiss-Friedman also testified that she provided Murphy with copies of the three (3) police reports which were available and asked him to tell her if he recalled

5

anything different from what the officers' reports indicated.  Weiss-Friedman stated that

Murphy verified that he was at the scene of the altercation described in the police reports,

and Murphy's account of events "suggested that the police had reason to be where they

were when they found" Murphy.  (Doc. No. 25, p. 30.)  Murphy did not suggest to Weiss-

Friedman that there were any deficiencies in the officers' version of events; Weiss-

Friedman testified that she discussed with Murphy the possibility of the other people

identified in the police report being witnesses on his behalf, but they "did not have anyone

[who] . . . could come forward and offer some different explanation." (Doc. No. 25, p. 32.)

Weiss-Friedman also testified that she believed the basis for Murphy's arrest was that he

did not stop walking when an officer directed him to do so and appeared to attempt to pull

a gun out of his pants.  (Doc. No. 25, p. 38.)

     Similarly, Murphy testified that, during an altercation or "struggle" between him and

two other males, a gun fell to the ground which he picked up before someone else did.

(Doc. No. 25, pp. 5-6.)  Murphy stated that he placed the gun in his waistband and that he

and his cousin started walking away from the scene of this altercation.  Murphy testified

that he was approached by a police officer who asked Murphy if he could speak to him and

that he (Murphy) continued walking; Murphy also testified that he kept walking after the

officer pulled his taser gun and handgun and asked Murphy to stop.  (Doc. No. 25, p. 11.)

Murphy declared that he discussed these facts with Weiss-Friedman and that he felt it was

"wrong" how the officers "got the gun off of" him although he did not express this to her in

terms of filing a motion to suppress.  (Id.)  Murphy stated that Weiss-Friedman informed

him that it did not matter how the officers got the gun off of him because he was going to

be charged anyway.

Murphy only offers bare assertions, which are unsupported by any facts or laws, as the basis of his claim that Weiss-Friedman's assistance was ineffective because she did not file a motion to suppress.  This is insufficient to obtain relief under § 2255.  See Caderno v. United States, 256 F.3d 1213, 1217 (11th Cir. 2001) (noting that habeas relief is not warranted when claims are merely conclusory allegations unsupported by specifics); see also United States v. Yizar, 956 F.2d 230, 234 (11th Cir. 1992) (stating that a petitioner must set forth sufficient allegations to demonstrate that he is entitled to his requested relief).  Nonetheless, Murphy's version of the facts underlying his arrest[1] is very similar to those offered by the police officers in their reports.  It does not appear that, had a motion to suppress been filed, Murphy would have been successful.  Accordingly, Murphy has failed to show that he was prejudiced by Weiss-Friedman's inaction to overcome his procedural default on this issue.

**C.    No Written Objections to PSI.**

Murphy asserts that Weiss-Friedman was ineffective because she did not file timely written objections to the PSI to challenge the four (4) point enhancement, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(b)(5), found in paragraph 15 of the PSI.  Murphy contends that Weiss-Friedman should have filed written objections to this enhancement because the record does not show that Murphy committed another felony offense involving a firearm other than the instant offense.  Murphy alleges that Weiss-Friedman also was ineffective because she did not challenge the one (1) point

---

[1] Murphy asserts that his testimony at the evidentiary hearing establishes that Weiss-Friedman could make relevant and persuasive arguments in a motion to suppress.  (Doc. No. 31, p. 3.)  To the contrary, Murphy's testimony at the evidentiary hearing speaks the opposite conclusion.  Murphy's testimony corroborates the police officers' versions of events, which support the permissibility of the stop and search of Murphy.

enhancement found in paragraph 25 of the PSI, which may have been based on a juvenile arrest. Murphy also alleges that Weiss-Friedman rendered ineffective assistance because he did not receive a two (2) level decrease for his acceptance of responsibility, even though he voluntarily entered a guilty plea and truthfully admitted the conduct relevant to support his conviction.

The Government alleges that Murphy properly received the four point enhancement. The Government avers that Murphy's federal charge of being a convicted felon in possession of a firearm was enhanced based on Murphy's other crimes, which included trying to retrieve a firearm during his arrest, as he admitted. The Government also avers that Weiss-Friedman brought to the Court's attention during sentencing Murphy's concern about the enhancement; she concluded the enhancement applied, and Murphy understood that it did. The Government asserts that, even if Murphy should not have been assessed one point for a conviction he obtained before reaching age 18, his criminal history score would place him in the same criminal history category, and his sentence would be unchanged. The Government also asserts that Murphy was arrested for driving under the influence while he was on pretrial release, and the United States Probation Office recommended the denial of a reduction for acceptance of responsibility. The Government asserts that the Court adopted this recommendation over Weiss-Friedman's objection. Thus, Murphy cannot show deficient performance or prejudice on this ground, according to the Government.

### 1.    Murphy's U.S.S.G. § 2K2.1(b)(5) Enhancement.

Murphy, through counsel, contends that his trial counsel rendered ineffective assistance by not objecting to the four (4) level enhancement based on a state charge of

aggravated assault using a gun. (Doc. No. 36, p. 5.) Murphy asserts that the circumstance considered "aggravating" in his case is the statement he made after his arrest that he was going to shoot the officers. (Doc. No. 36, p. 6.) Murphy alleges that this is insufficient under Georgia law to be a valid aggravated assault charge, and thus, he did not commit an underlying felony offense to warrant the four level enhancement.

Assuming, *arguendo*, that Murphy's contention that his post-arrest statement formed the basis of the two aggravated assault charges he faced and that this is an insufficient basis for such charges under State law, his contention that he should not have received a four level enhancement is without merit. Not only was Murphy charged by the State with aggravated assault on law enforcement officers[2], he was also charged with: pointing a gun at another person; possession of a firearm by a convicted felon; carrying a pistol without a license; carrying a concealed weapon; and obstruction of officers with violence. (PSI, ¶ 34.) These charges were ultimately dismissed by the Glynn County District Attorney's Office due to his federal prosecution; however, these charges were properly considered by the United States Probation Office in providing the Court with its sentence recommendation for Murphy. Murphy has a previous conviction for carrying a concealed weapon. (PSI, ¶ 28.) As a result of the altercation and Murphy's subsequent arrest, he faced a felony charge for carrying a concealed weapon. See O.C.G.A. § 16-11-126(b)(2) (a second offense of carrying a concealed weapon is a felony).

---

[2] The police reports detailing the events which occurred on the night of Murphy's arrest reveal that Officer Cothren received information that Officers Wilson and Meyer were engaged in a fight with a man who had a gun in front of 90 Brooklyn Homes. Officer Meyer stated that Murphy was trying to reach for his waistband (where the gun was) and that he (Meyer) believed that Murphy would have tried to shoot him or Officer Wilson had Murphy been able to get the gun. Officer Wilson noted that dispatch advised him of "unknown weapons" in a fight. Officer Wilson also noted that he believed Murphy had a weapon and that he observed the outline of a large handgun inside the front of Murphy's pants. (Doc. No. 28, Exs. A-C.)

AO 72A
(Rev. 8/82)

Pursuant to U.S.S.G. § 2K2.1(a)(4)(A), the base offense level attributed to a defendant who is a convicted felon in possession of a firearm is 20. Section 2K2.1(b)(5) provides that, "If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase the offense level by 4 levels." It is inconsequential if the statement Murphy made to the officers after his arrest was the basis for the aggravated assault on police officer charges he faced. At the very least, Murphy faced one felony charge in addition to being a convicted felon in possession of a firearm– carrying a concealed weapon. Thus, there was a sufficient basis for giving Murphy a four level enhancement. Murphy cannot show that he was prejudiced by Weiss-Friedman's failure to file a written objection to this enhancement.

### 2.    Murphy's Juvenile Conviction.

Murphy avers that he erroneously received a one (1) point enhancement for the offense listed in paragraph 25 of his PSI. Murphy alleges that this offense occurred while he was a juvenile and was more than five (5) years prior to the instant offense. (Doc. No. 27, p. 3.)

One (1) point is assessed under U.S.S.G. § 4A1.1(c) "for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense[.]" U.S.S.G. § 4A1.2(d)(2)(B). The offense detailed in paragraph 25 occurred in 1995, which was more than five (5) years prior to the instant 2003 offense. It appears that Murphy's criminal history was erroneously computed; nonetheless, this error did not affect his sentencing range.

Murphy's criminal history was computed in the PSI as being 12, and his criminal history category was V. Murphy should not have been assessed the one (1) point detailed

10

in paragraph 25 of his PSI.  However, even with 11 criminal history points[3], Murphy's sentencing range was 92-115 months.  (2003 Sentencing Table).  Accordingly, even if Weiss-Friedman's assistance was ineffective due to her failure to object to the addition of this offense in his PSI, Murphy cannot show that he was prejudiced as a result.

### 3.    No Reduction for Acceptance of Responsibility.

Murphy asserts that he did not receive a two (2) level reduction for acceptance of responsibility even though he voluntarily entered into a plea agreement with the Government and truthfully admitted to the relevant conduct.  Murphy also asserts that Weiss-Friedman did not file a timely written objection to this denial.

While Murphy was released from custody prior to his sentencing, he was arrested by a Glynn County Police officer for driving under the influence.  (PSI, ¶¶ 35, 42.)  The United States Probation Office recommended that Murphy not be given a two level decrease because he failed to cease all criminal activity during his pre-sentence release, and thus, Murphy did not demonstrate acceptance of responsibility.  (PSI Addendum.)

Weiss-Friedman addressed the Court at Murphy's sentencing regarding Murphy's arrest for driving under the influence.  She informed Judge Alaimo that she subpoenaed two (2) witnesses from the Chemical Dependency Counseling Office to testify that Murphy, as someone who reported problems with alcohol, relapsed on the night in question.  (Doc. No. 61, pp. 2-3.)  Weiss-Friedman met with one of these witnesses after Judge Alaimo continued the sentencing hearing, and it was evident to her that this witness would not be

---

[3] United States Probation Officer Philip Lyons testified at the evidentiary hearing before the undersigned that, had he calculated Murphy's criminal history points, Murphy would have 10.  Murphy's sentence would have been the same, however, whether he had 10, 11, or 12 criminal history points.  (Doc. No. 74, p. 40; 2003 Sentencing Table.)

AO 72A
(Rev. 8/82)

helpful to Murphy's position. (Doc. No. 35, p. 3-4.) Weiss-Friedman informed Judge Alaimo that Murphy denied operating a car under the influence of alcohol and that the results of the blood alcohol test taken on the day of Murphy's arrest for driving under the influence had not been returned. (Doc. No. 35, pp. 6, 10.) Weiss-Friedman recognized that Judge Alaimo had discretion to accept or reject the Probation Office's recommendation that Murphy not be given a two level decrease for acceptance of responsibility. Weiss-Friedman asked Judge Alaimo to sentence Murphy at the lower end of the Guidelines range. (Doc. No. 35, pp. 6-7, 10.) Judge Alaimo, based on Weiss-Friedman's statements, sentenced Murphy to 92 months' imprisonment, the low end of the sentencing range he faced. (Doc. No. 35, p. 16.)

Weiss-Friedman did not file a written objection to the denial of a two level decrease for acceptance of responsibility. However, she verbally objected to the Probation Office's recommendation that Murphy's acceptance of responsibility be taken away from him. It was because of the statements she made at sentencing that Judge Alaimo sentenced Murphy to the lowest possible sentence.[4] It is disingenuous for Murphy to now contend that Weiss-Friedman rendered ineffective assistance by not making a formal, written objection to the denial of a reduction for acceptance of responsibility. Even if Weiss-Friedman's representation could be deemed ineffective in this regard, Murphy has not shown that any prejudice inured to him, as Judge Alaimo was free to accept or reject the Probation Office's recommendation that Murphy not receive this reduction.

---

[4] Weiss-Friedman was able to get Murphy's base offense level decreased from 24 to 20 due to an error she found in the PSI. (Doc. No. 35, p. 2; Doc. No. 37, p. 4; Doc. No. 25, p. 20; Doc. No. 74, pp. 13, 43.)

AO 72A
(Rev. 8/82)

**D.    The Failure to File an Appeal**.

Murphy asserts that Weiss-Friedman did not file an appeal to challenge the enhancements to his sentence or the denial of the reduction for acceptance of responsibility.  Murphy also asserts that he instructed Weiss-Friedman to file an appeal, but she failed to do so.

The Government contends that any claims Murphy asserts that his attorney should have pursued on direct appeal lacked merit.  The Government also contends that, if this Court concludes that Murphy instructed his counsel to file an appeal and she failed to do so, the best he can obtain is the ability to file an out-of-time appeal.

Judge Alaimo informed Murphy at sentencing:

> [Y]ou are now advised that you have a right to appeal from this sentence. Should you desire to do that, you must file what is called a notice of appeal within ten days from today.  If you want any assistance in filing that notice of appeal, you can ask the clerk there, or your own attorney, to prepare one and file it.
>
> During any such appeal, you would be entitled to the assistance of a lawyer such as you have had.  In the event you do appeal, I will ask Ms. Weiss-Friedman to continue representing you.

(Doc. No. 35, p. 19.)

Murphy testified at the evidentiary hearing before the undersigned that he asked Weiss-Friedman to file an appeal on his behalf.  Murphy also testified that Weiss-Friedman informed him that she did not file an appeal on his behalf because, according to her, he did not ask her to do so.  (Doc. No. 25, p. 17.)  Murphy further testified that, although he recalled Judge Alaimo informing him during sentencing that he had the right to file an appeal and that the clerk would file an appeal for him, he (Murphy) assumed that his attorney would file an appeal on his behalf.  (Doc. No. 25, pp. 22-23.)

13

In contrast, Weiss-Friedman testified that Murphy did not ask her to file an appeal on his behalf within ten days after he was sentenced or at any other time. Weiss-Friedman stated that "Mr. Murphy never told me that he wanted me to file an appeal. Mr. Murphy and I never had a discussion about the appeal or the possibility of an appeal after the sentence, other than the discussion that was had in open court with Judge Alaimo." (Doc. No. 74, p. 17.) Weiss-Friedman also testified that she never received anything in writing from Murphy concerning an appeal until many months after the fact when Murphy wrote her a letter inquiring about the status of an appeal. Weiss-Friedman further testified that she spoke with Murphy's mother and girlfriend after Murphy's sentencing, and "at no time" was an appeal discussed. (Doc. No. 74, p. 18.) Weiss-Friedman stated that she did not receive any telephone calls from Murphy or anyone acting on his behalf regarding an appeal. (Doc. No. 74, p. 19.)

An evidentiary hearing was conducted in order for the Court to make credibility determinations on the issue of whether Murphy asked his counsel to file an appeal on his behalf. See Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1211 (11th Cir. 2003) (noting that an evidentiary hearing is required to resolve contested facts). "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). As the fact finder at the evidentiary hearing, the undersigned had the opportunity to observe the witnesses and their demeanor and to hear their testimony. The undersigned determines that Weiss-Friedman's testimony is more credible than that proffered by Murphy.

AO 72A
(Rev. 8/82)

Weiss-Friedman testified that she has been a trial attorney since 1978. Although her primary areas of practice are domestic relations and social security, Weiss-Friedman testified that she has tried a number of criminal cases in the State system. She also testified that she has been appointed to approximately six (6) cases in the federal system, all of which resulted in resolutions before trial. (Doc. No. 25, pp. 25-26.) She felt confident that she filed any and all appropriate motions in those cases. Weiss-Friedman had written records of her contacts with Murphy, whether her contacts with him were in person, telephonically, or in writing. The credible evidence indicates that Murphy did not ask Weiss-Friedman to file an appeal on his behalf. It cannot be said that Weiss-Friedman provided Murphy with ineffective assistance of counsel due to her failure to file an appeal on his behalf.

In sum, Murphy fails to establish that Weiss-Friedman rendered ineffective assistance of counsel during the period of her representation as "cause" to excuse his procedural default on the above detailed claims.

## II.    Murphy's Rule 6(f) Claim is Without Merit.

Murphy contends that the trial court lacked jurisdiction over him because the indictment was not returned in open court, as required by FED. R. CRIM. P. 6(f). Contrary to Murphy's contention, the records in his criminal case, CR204-21, reveal that the indictment against Murphy was filed in open court on May 14, 2004. (CR204-21, Doc. No. 1.) Murphy's contention is without merit.

AO 72A
(Rev. 8/82)

III.    **Murphy's Sixth Amendment Claim is Without Merit.**

Murphy alleges that his sentence violates the Sixth Amendment.  Murphy fails to provide any facts or case law in support of this allegations, and the Court presumes that Murphy's claim is based on the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed.2d 621 (2005).  This Court entered its judgment on October 28, 2004, and, because Murphy did not file an appeal, his sentence became final on November 12, 2004.  See FED. R. APP. P. 4(b)(1)(A)(i) (stating that a defendant's notice of appeal must be filed within 10 days after the entry of the judgment being appealed).  Booker was decided on January 12, 2005.  The Eleventh Circuit Court of Appeals has determined that Booker does not apply retroactively to cases on collateral review.  See Varela v. United States, 400 F.3d 864, 867 (11th Cir. 2005).  Murphy's allegation on this ground is likewise without merit.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Murphy's Motion to Vacate, Set Aside, or Correct his Sentence, filed pursuant to 28 U.S.C. § 2255, be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this _17th_ day of March, 2006.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)